**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| ATLANTIC SOLUTIONS, LLC; and TWC GROUP,<br>          *Plaintiffs*,<br><br>                              v.<br><br>PAUL LATHAM; KIMBERLY A. SMITH; and SCOTT A SMITH,<br>          *Defendants*. | C.A. No. 1:21-cv-0328-MSM-PAS |

**DEFENDANTS PAUL LATHAM AND KIMBERLY A. SMITH'S**
**VERIFIED ANSWER TO FIRST AMENDED COMPLAINT, AMENDED**
**COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

As and for their answer to the Complaint, Defendants Paul Latham and Kimberly A.

Smith respond as follows:

1.      Defendants deny the allegations set forth in Paragraph 1.

**Response as to "THE PARTIES"**

2.      Defendants are without knowledge and information sufficient to form a belief as

to the truth of the allegations set forth in Paragraph 2.

3.      Defendants are without knowledge and information sufficient to form a belief as

to the truth of the allegations set forth in Paragraph 3.

4.      In response to Paragraph 4, Defendants admit that Scott A. Smith negotiated

certain contract terms with Plaintiffs and deny the remaining allegations set forth in the

paragraph.

5.      In response to Paragraph 5, Defendants admit that Kimberly A Smith is a party to certain agreements addressed in Plaintiffs' Complaint and deny the remaining allegations set forth in the paragraph.

6.      In response to Paragraph 6, Defendants admit that Paul Latham is a party to one of the agreements addressed in Plaintiffs' Complaint and that he resides at 61 Appian Way, Barrington RI 02806 and deny the remaining allegations set forth in the paragraph.

**Response as to "JURISDICTION AND VENUE"**

7.      The allegations set forth in Paragraph 7 are allegations of law to which no responsive pleading is required.  To the extent a responsive pleading is required, Defendants admit the allegations.

8.      Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8.

9.      Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9.

10.      Defendants admit the allegations set forth in Paragraph 10.

11.      Defendants admit the allegations set forth in Paragraph 11.

12.      In response to Paragraph 12, Defendants admit that the Joint Venture Agreement between Paul Latham and Kimberly A Smith provides that Rhode Island shall be the sole venue for litigation between Paul Latham and Kimberly A Smith regarding disputes arising under that agreement and deny the remaining allegations set forth in the paragraph.

13.      Defendants deny the allegations set forth in Paragraph 13.

14.      Defendants admit the allegations set forth in Paragraph 14.

15.      Defendants deny the allegations set forth in Paragraph 15.

## Response as to "FACTUAL ALLEGATIONS"

16.     Defendants deny the allegations set forth in Paragraph 16.

17.     In response to paragraph 17, Defendants admit that the "trading program" involved participation in certain trading activity conducted by one or more large banks, are without information sufficient to form a belief as to the truth as to whether and when Mr. Green enlisted the assistance of Mr. Jundanian and deny the remaining allegations set forth in the paragraph.

18.     Defendants admit the allegations set forth in Paragraph 18.

19.     Defendants admit the allegations set forth in Paragraph 19.

20.     Defendants deny the allegations set forth in Paragraph 20.

21.     In response to Paragraph 21, Defendants admit that Scott A Smith was significantly involved in in all aspects of Defendants' participation in the trading program and that Kimberly A Smith was a party to the agreements related to the trading program and deny the remaining allegations set forth in the paragraph.

22.     Defendants admit the allegations set forth in Paragraph 22.

23.     In response to Paragraph 23, Defendants admit that Scott A. Smith and Kimberly A. Smith are married and that Scott A. Smith was aware of the terms and provisions of the agreements related to the trading program to which Kimberly A. Smith was a party and deny the remaining allegations set forth in the agreement.

24.     In response to Paragraph 24, Defendants deny that Lathan negotiated a privileged position for himself in the deal documents, deny that Latham knew of or understood Plaintiffs' involvement in the transaction at the time he accepted the offer to participate in the trading program and admit the remaining allegations set forth in the paragraph.

25.     Defendants deny the allegations set forth in Paragraph 25.

26.     In response to Paragraph 26, Defendants admit that Kimberly A. Smith and Paul Latham entered into a written Joint Venture Agreement with an effective date of April 24, 2020, admit that Plaintiffs purport to have attached a copy of that agreement to the First Amended Complaint, deny the allegations set forth in the paragraph to the extent they purport to describe and characterize the terms of that agreement in a manner inconsistent with the actual written terms of the agreement, and refer the Court to the Joint Venture Agreement for a complete and accurate recitation of those terms.

27.     In response to Paragraph 27, Defendants admit that Kimberly Smith entered into a Minimum Guaranteed Profit Participation Agreement ("MGPPA") with Plaintiffs and Jonathan Walker in reliance on fraudulent statements made to her by Plaintiffs, admit that Plaintiffs purport to have attached a copy of that agreement to the First Amended Complaint, admit that Jonathan Walker was responsible for introducing Paul Latham to Kimberly Smith and deny the remaining allegations set forth in the paragraph.

28.     In response to Paragraph 28, Defendants admit that Scott A. Smith negotiated the terms of the MGPPA on behalf of Kimberly A. Smith and regularly communicated with Plaintiffs on behalf of Kimberly A. Smith with her knowledge and consent, admit that Plaintiffs made material misrepresentations to Scott A. Smith upon which he relied in negotiating the terms of the MGPPA, and are without knowledge and information sufficient to form a belief as to Plaintiffs' reliance on Scott A. Smith's authority, and deny the remaining allegations set forth in the paragraph.

29.     Defendants deny the allegations set forth in Paragraph 29 to the extent they purport to describe and characterize the terms of the MGPPA in a manner inconsistent with the

actual written terms of the agreement, and refer the Court to the MGPPA for a complete and accurate recitation of those terms.

30.     Defendants deny the allegations set forth in Paragraph 30 to the extent they purport to describe and characterize the terms of the MGPPA in a manner inconsistent with the actual written terms of the agreement, and refer the Court to the MGPPA for a complete and accurate recitation of those terms.

31.     In response to Paragraph 31, Defendants admit that the trading program was contractually required to commence no later than May 23, 2020, the trading program did not commence by that date, the trading program did not generate any payments to Defendants or Plaintiffs at any point in time, Plaintiffs were advised that the trading program was delayed, but eventually completed a bullet trade, Scott A. Smith communicated that information to Plaintiffs, and Scott A. Smith advised Plaintiffs that a second bullet trade would occur and that the trading program would last for 40 weeks, and deny the remaining allegations set forth in the paragraph.

32.     Defendants deny the allegations set forth in Paragraph 32.

33.     Defendants deny the allegations set forth in Paragraph 33.

34.     Defendants deny the allegations set forth in Paragraph 34.

35.     In response to paragraph 35, Defendants admit that Plaintiffs purport to have attached a copy of an email chain to the First Amended Complaint and deny the remaining allegations set forth in Paragraph 35.

36.     Defendants deny the allegations set forth in Paragraph 36.

37.     Defendants deny the allegations set forth in Paragraph 37.

38.     Defendants deny the allegations set forth in Paragraph 38.

39.     Defendants deny the allegations set forth in Paragraph 39.

40.     In response to paragraph 40, Defendants admit that Scott Smith advised Mr. Jundanian and Mr. Green that if any profits were paid to Defendants by the trading program, Mr. Jundanian and Mr. Green would be paid a commission and deny the remaining allegations set forth in the paragraph.

41.     In response to Paragraph 41, Defendants admit that there was a phone call between Plaintiffs and at least one of the Defendants and deny the remaining allegations set forth in the paragraph.

42.     In response to paragraph 42, Defendants admit that the contract with the trading platform was cancelled by the trading platform, that the JVA was dissolved, and that Defendants never received any payments as a result of the trading program and deny the remaining allegations in the paragraph.

43.     Defendants deny the allegations set forth in Paragraph 43.

44.     Defendants deny the allegations set forth in Paragraph 44.

**Response to "FIRST CLAIM FOR RELIEF –
Breach of Contract – MGPPA (Against Ms. Smith and Paul Latham)"**

45.     Defendants incorporate by reference their responses to Paragraphs 1 through 44 as though fully set forth herein.

46.     In response to Paragraph 46, Defendants admit that Kimberly A. Smith entered into the MGPPA with Plaintiffs and Jonathan Walker and deny the remaining allegations set forth in the paragraph.

47.     Defendants deny the allegations set forth in Paragraph 47.

48.     Defendants deny the allegations set forth in Paragraph 48.

49.     Defendants deny the allegations set forth in Paragraph 49.

50.     Defendants deny the allegations set forth in Paragraph 50.

**Response to "SECOND CLAIM FOR RELIEF –
Breach of Contract – November 2020 Agreement
(Against Ms. Smith and Paul Latham)"**

51.     Defendants incorporate by reference their responses to Paragraphs 1 through 50 as though fully set forth herein.

52.     Defendants deny the allegations set forth in Paragraph 52.

53.     Defendants deny the allegations set forth in Paragraph 53.

54.     Defendants deny the allegations set forth in Paragraph 54.

55.     Defendants deny the allegations set forth in Paragraph 55.

56.     Defendants deny the allegations set forth in Paragraph 56.

**Response to "THIRD CLAIM FOR RELIEF –
Unjust Enrichment (Against All Defendants)"**

57.     Defendants incorporate by reference their responses to Paragraphs 1 through 56 as though fully set forth herein.

58.     Defendants deny the allegations set forth in Paragraph 58.

59.     Defendants deny the allegations set forth in Paragraph 59.

60.     Defendants deny the allegations set forth in Paragraph 60.

61.     Defendants deny the allegations set forth in Paragraph 61.

62.     Defendants deny the allegations set forth in Paragraph 62.

**AFFIRMATIVE DEFENSES**

<u>First Defense</u>

The Complaint fails to state a claim upon which relief may be granted.

<u>Second Defense</u>

Plaintiffs' claims fail for lack of consideration.

<u>Third Defense</u>

Plaintiffs are precluded from recovery in this case by virtue of their own unclean hands.

<u>Fourth Defense</u>

The Complaint is barred, in whole or in part, by the equitable doctrines of laches, estoppel, waiver, unclean hands, and/or unjust enrichment.

<u>Fifth Defense</u>

Plaintiffs' claims are barred in whole or in part by their own breach of the agreements at issue in this case.

<u>Sixth Defense</u>

Plaintiffs' claims are barred in whole or in part based on fraud, bad faith, and/or illegality.

**AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT
<u>AGAINST LEE JUNDANIAN AND JON GREENE</u>**

1.      Paul Latham is a resident of Rhode Island.

2.      Kimberly A. Smith is a resident of Arkansas.

3.      Upon information and belief, Third-party Defendant Lee Jundanian is a resident of Maryland and is a member of Plaintiff Atlantic Solutions, LLC.

4.      Counterclaim Defendant Atlantic Solutions, LLC claims to be a Maryland limited liability company with an office in Bethesda.

5.      Upon information and belief, Lee Jundanian is a resident of Maryland and is a member of Atlantic Solutions, LLC.

6.      Upon information and belief, Third-party Defendant Jon Greene is a resident of Maryland and is or was a partner in Counterclaim Defendant TWC Group.

7.      Counterclaim Defendant TWC Group claims to be a Maryland partnership with an office in Bethesda, Maryland.

8.      This Court has subject matter jurisdiction over Atlantic Solutions, LLC, TWC Group, Mr. Jundanian, and Mr. Greene pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Atlantic Solutions, LLC and TWC Group because they voluntarily submitted themselves to the jurisdiction of this Court in their underlying Complaint.

10.     This Court has personal jurisdiction over Mr. Jundanian and Mr. Greene, *inter alia*, because they committed tortious acts in the State of Rhode Island that resulted in injuries to a Rhode Island resident, Mr. Latham, with whom they purposefully conducted business.

11.     Sometime prior to 2019, Kimberly A. Smith and her husband, Scott A. Smith, were invited to participate in a private placement program through a financial services company known as a "trading platform."

12.     A private placement program is an investment vehicle available to a select few wealthy individuals and corporations that typically provides extraordinarily high rates of return. In essence, a private placement program requires investors to place large sums of cash on deposit in a bank, agree to "freeze" the account, and not withdraw any of the funds for at least several months.  These large cash deposits are then leveraged by investment banks at a ratio of up to 10 to 1 to support trading activity.  For example, a $100 million cash deposit at a 10 to 1 ratio will support trading positions of $1 billion.  As the bank realizes trading profits on the leveraged deposits during the course of the program, a share of the profits are distributed to the participants in the private placement program.

13.     Private placement programs are extraordinarily lucrative and highly sought after by qualified investors and corporations.  For this reason, the trading platforms and investment

banks that offer private placement programs do not advertise these opportunities, offer them on an invite-only basis, and perform due diligence on all potential investors.

14.     The private placement program to which the Smiths were invited required a deposit of at least $5 million for each investor.  Although the Smiths had previously participated in a private placement program, in 2020 they were not in a position to make the required $5 million minimum deposit.  Not wanting to lose the opportunity to participate in the program, however, they sought a partner who would put up the money and share the profits in exchange for the ability to participate in the program.

15.     In the course of attempting to locate a partner to put up the required cash deposit, Scott Smith was contacted by Jonathan Greene, who was interested potential trading opportunities.

16.     Through a company called Hub Vision and its Manager, Jonathan Walker, Mr. Green identified Paul Latham as a potential partner for the Smiths and provided an introduction.

17.     Paul Latham agreed to participate in the private placement program and make the required $5 million deposit.  Paul Latham and Kimberly A. Smith formed a joint venture for the purpose of engaging in the private placement program.  They executed a written Joint Venture Agreement that set out the terms of their partnership.

18.     The Joint Venture Agreement contemplated that the trading program would be through Bank of America, would have a term of one year and would launch within 30 days of April 28, 2020.  In exchange for leaving his $5 million on deposit for the term of the program, the Joint Venture Agreement provided that Paul Latham would receive $12.5 million plus his initial deposit of $5 million.  As consideration for the invitation to participate in the program, Kimberly A. Smith would receive $7.5 million dollars.

19.     Unbeknownst to Paul Latham, Kimberly A. Smith agreed to pay Mr. Walker, Mr. Greene and Lee Jundanian a commission for introducing her to Paul Latham.  The commission would take the form of a portion of the trading profits from the private placement program.

20.      Mr. Walker and Mr. Greene presented Kimberly Smith with a draft document called the Minimum Guaranteed Profit Participation Agreement (the "MGPPA") that purported to create a second joint venture between Kimberly A. Smith, TWC Group (which was Mr. Greene's partnership), HUB Vision (Mr. Walker's company) and a company called Atlantic Solutions, which was owned by Mr. Jundanian.  To Kimberly A. Smith's knowledge, Mr. Jundanian had no role in introducing her to Paul Latham, but was a business partner of Mr. Greene with whom he agreed to split his commission for the introduction.  The draft MGPPA provided that Atlantic Solutions, TWC Group and Hub Vision would receive a share of the profits generated by the private placement program trading profits in an amount anticipated to be approximately $30 million.

21.     Kimberly A. Smith and Scott A. Smith were concerned that the amount of commission set forth in the draft MGPPA and sought by Atlantic Solutions, TWC Group and Hub Vision was disproportionate to the amount of trading profits that was to be paid to Paul Latham.  She did not think it was fair or appropriate that the people who did nothing more than introduce her to Paul Latham collectively would receive more than double the trading profits that Paul Latham would receive, even though Paul Latham put up the $5 million dollars that make the participation in the trading program possible.

22.     After the Smiths expressed concerns regarding the disproportionate amount of commissions, Lee Jundanian and Jon Greene represented to Scott Smith that Paul Latham was aware of the commissions to be paid to them and had agreed to the amount of those

11

commissions.  Those representations were false when made.  Prior to the execution of the MGPPA, Paul Latham was not aware that commissions would be paid to Atlantic Solutions, TWC Group and Hub Vision (or the principals of those companies) and had not agreed to the amount of those commissions.

23.     If Paul Latham had been made aware of the fact that the trading program would generate profits to the joint venture of approximately $50 million, he would have insisted that his share of those profits exceed $12.5 million and that the commission paid to Atlantic Solutions, TWC Group and Hub Vision be significantly less than $30 million.

24.     If Kimberly A. Smith had known that Paul Latham was not aware that Atlantic Solutions, TWC Group and Hub Vision stood to receive a combined total commission of $30 million in profits from the trading program and that he had not agreed to such commissions, she would not have entered into the MGPPA.

25.     Kimberly A. Smith, however, had no justifiable reason to doubt the veracity of the statements made by Lee Jundanian and Jon Greene.

26.     In reliance on the false representations and/or material omissions of fact by Lee Jundanian, Jon Greene and Johnathan Walker regarding Paul Latham's knowledge of and agreement to the commissions set forth in the MGPPA, Kimberly A. Smith executed the MGPPA.

27.     The MGPPA expressly incorporates and adopts all of the timeframes and many of the terms set forth in Paul Latham and Kimberly A. Smith's Joint Venture Agreement.

28.     The sole purpose of the joint ventures created in the Joint Venture Agreement and the MGPPA was a private placement trading program with Bank of America that was to launch by no later than May 28, 2020.

29.     The private placement trading program contemplated and expressly defined by the Joint Venture Agreement and the Commission Agreement did not launch by May 28, 2020. Accordingly, both agreements were null, void and unenforceable after May 28, 2020.

30.     Despite the failure to launch of the expressly contemplated private placement trading program, Paul Latham and Kimberly A. Smith continued to work towards participating in another private placement trading program with Bank of America or another bank.  Paul Latham continued to leave $5 million on deposit in a bank account and Kimberly A. Smith remained in contact with the trading platform that invited her to participate in the Bank of America trading program that failed to launch.

31.     Kimberly A. Smith continued to work with the trading platform after May 28, 2020 to attempt to participate in another private placement trading program.  On July 23, 2020, Kimberly A Smith did enter into an agreement with an asset manager for the purpose of participating in a private placement trading program (the "July 23, 2020 Trading Program").

32.     After May 28, 2020, Mr. Jundanian began to aggressively demand information on the status of other potential trading programs in which Kimberly A. Smith and/or Paul Latham may be able to participate.  Scott A. Smith and Paul Latham communicated to Mr. Jundanian the information they received from the trading platform, but Mr. Jundanian insisted on having access to the trading platform.  On at least one occasion, Mr. Jundanian contacted a representative of the trading platform and fraudulently impersonated Paul Latham and Kimberly A. Smith's attorney in an effort to gain more information regarding the status of the trading program.

33.     Upon information and belief, at all times relevant herein, Mr. Jundanian was acting on behalf of and with the approval of Mr. Greene.

34.     Paul Latham and Scott A. Smith repeatedly advised Mr. Jundanian that the trading platform was circumspect and either unable or unwilling to provide information regarding the status or activity of the trading program in which they sought to participate.  They further advised him that his incessant interference was counter-productive and could result in the revocation of their opportunity to participate in the trading program.  Despite this information, Mr. Jundanian continued his efforts to gain information from and access to the trading platform.

35.     Mr. Jundanian had no justification for impersonating an attorney and attempting to obtain information regarding a trading contract to which he was not a party, and Mr. Jundanian's interference ultimately resulted in the cancellation of the trading platform.

36.     In February 2021, Kimberly A. Smith was advised that the July 23, 2020 Trading Program had been terminated along with her July 23, 2020 agreement with the asset manager. Kimberly A. Smith did not receive any trading profits when her contact was terminated, nor did Scott A. Smith, or Paul Latham.  At no point between April 2020 and the present did Kimberly A. Smith, Scott A. Smith or Paul Latham ever receive any trading profits or other remuneration either from the trading platform or the trading program that was the subject of the Joint Venture Agreement and the MGPPA or otherwise as a result of their participation in any private placement trading program, including the July 23, 2020 Trading Program.

37.     Scott A Smith notified Lee Jundanian and Jon Greene that Kimberly A. Smith's contract with the trading platform was terminated and that no trading profits had been paid.

### FIRST CLAIM FOR RELIEF
### FRAUDULENT INDUCEMENT

38.     Kimberly A. Smith and Paul Latham repeat and incorporate all allegations set forth in Paragraphs 1 through 37 as though fully set for the herein.

39.     Lee Jundanian and Jon Greene made false representations to Kimberly A. Smith and Scott Smith regarding Paul Latham's knowledge of and agreement to the commission payments set forth in the MGPPA, including the false representation that Paul Latham was aware of the commissions to be paid to them and had agreed to the amount of those commissions.

40.     Lee Jundanian and Jon Greene knew their statements to Kimberly A. Smith and Scott Smith were false and intended their false statements to induce reliance by Kimberly A Smith in order to obtain her signature on the MGPPA.

41.     At all times relevant, Lee Jundanian was acting within the scope of his actual and apparent authority as a member of Atlantic Solutions, Inc. and Jon Greene was acting within the scope of his actual and apparent authority as a partner or sole proprietor of TWC Group.

42.     Kimberly A. Smith justifiably relied on the false representations of Lee Jundanian and Jon Greene in agreeing to execute the MGPPA and entering into that agreement.

43.     As a result of her reliance on the false representations of Lee Jundanian and Jon Greene, Kimberly A. Smith has suffered damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACT**

44.     Kimberly A. Smith and Paul Latham repeat and incorporate all allegations set forth in Paragraphs 1 through 43 as though fully set for the herein.

45.     Kimberly A. Smith and Paul Latham were engaged in a joint venture that entered into a contract with a trading platform that permitted them to participate in a private placement trading program.

46.      Lee Jundanian and Jon Greene were aware that Kimberly A. Smith and Paul Latham were engaged in a joint venture that entered into a contract with a trading platform that permitted them to participate in a private placement trading program.

47.     Lee Jundanian and Jon Greene intentionally interfered with the contract between the joint venture and the trading platform without justification, and Mr. Jundanian's interference ultimately resulted in the cancellation of the trading platform, resulting in cancellation of the contract.

48.     At all times relevant, Lee Jundanian was acting within the scope of his actual and apparent authority as a member of Atlantic Solutions, Inc. and Jon Greene was acting within the scope of his actual and apparent authority as a partner or sole proprietor of TWC Group.

49.     As a result of the intentional interference of Lee Jundanian, Jon Greene, Atlantic Solutions, Inc., TWC Group, Kimberly A. Smith and Paul Latham have suffered damages in excess of $60 million and in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

50.     Kimberly A. Smith and Paul Latham repeat and incorporate all allegations set forth in Paragraphs 1 through 43 as though fully set for the herein.

51.     Kimberly A. Smith and Paul Latham had a valuable relationship with a trading platform that allowed them access to extraordinarily lucrative and limited private placement trading programs.

52.      Lee Jundanian and Jon Greene were aware that Kimberly A. Smith and Paul Latham had a valuable relationship with a trading platform and the extraordinary potential economic advantage created by that relationship.

53.     Lee Jundanian and Jon Greene intentionally interfered with the relationship between Kimberly A. Smith and Paul Latham and a trading platform without justification, resulting in the loss of current and future opportunities to participate in the trading program.

54.     At all times relevant, Lee Jundanian was acting within the scope of his actual and apparent authority as a member of Atlantic Solutions, Inc. and Jon Greene was acting within the scope of his actual and apparent authority as a partner or sole proprietor of TWC Group.

55.     As a result of the intentional interference of Lee Jundanian, Jon Greene, Atlantic Solutions, Inc., TWC Group, Kimberly A. Smith and Paul Latham have suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Kimberly A. Smith and Paul Latham request judgment:

1.     In favor of Kimberly A. Smith and Paul Latham and against Plaintiffs on all claims set forth in the First Amended Complaint;

2.     In favor of Kimberly A. Smith and Paul Latham and against Atlantic Solutions, Inc., TWC Group, Lee Jundanian and Jon Greene on all claims set forth in the Counterclaims and the Third-Party Complaint;

3.     Denying Plaintiffs' requests for money damages, costs, interest, attorneys' fees, and other relief;

4.     Awarding Defendants compensatory damages, punitive damages, costs and attorneys' fees; and

5.     Granting such other and further relief that this Court deems just and proper.

Dated: December 8, 2021

Defendants,
PAUL LATHAM and KIMBERLY A. SMITH
By their attorneys,

/s/ Geoffrey W. Millsom
Geoffrey W. Millsom (#6483)
Brenna Anatone Force (#8555)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607
gmillsom@apslaw.com
bforce@apslaw.com

## **VERIFICATION**

I have read the allegations of the Verified Answer, Counterclaims and Third-party Complaint and to the best of my knowledge they are true and accurate.

_____           _____
PAUL LATHAM                             KIMBERLY A. SMITH

## <u>VERIFICATION</u>

I have read the allegations of the Verified Answer, Counterclaims and Third-party Complaint and to the best of my knowledge they are true and accurate.

_____

PAUL LATHAM

KIMBERLY A. SMITH

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the within Verified Answer, Counterclaims and Third-party Complaint through the ECF system on the 8th day of December, 2021, and that notice will be sent electronically to the counsel who are registered participants identified on the Mailing Information for Case No. 3:21-cv-00328-MSM-PAS.

<u>/s/ Geoffrey W. Millsom</u>

1098637.v2